ORIGINAL

# In the United States Court of Federal Claims

No. 15-439C
(Filed: March 22, 2016)

**FILED**

**MAR 2 2 2016**

U.S. COURT OF
FEDERAL CLAIMS

```
************************************
APRIL L. GILLIAM,                  *
                                   *
              Plaintiff,           *
                                   *
v.                                 *
                                   *
THE UNITED STATES,                 *
                                   *
              Defendant.           *
************************************
```

Cross-Motions for Judgment on the
Administrative Record; Correction of
Military Records; AFBCMR; Testing for
Promotion; Duration of Absence Without
Leave; Administrative Discharge Board

April L. Gilliam, Jacksonville, FL, pro se.

William J. Grimaldi, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

      Plaintiff April L. Gilliam, proceeding pro se, contends that the United States Air Force ("Air Force"), in violation of its regulations, did not allow her to test for promotion, failed to consider certain evidence during proceedings under Article 15 of the Uniform Code of Military Justice, and denied her the opportunity to appear before an administrative discharge board during her involuntary separation proceedings. Plaintiff previously sought relief from the Air Force Board for Correction of Military Records ("AFBCMR"), but was unsuccessful. Consequently, she filed suit in this court, requesting that the court set aside her involuntary discharge, reinstate her to active duty, award back pay and allowances, and restore her ability to test for promotion. The parties cross-move for judgment on the administrative record. For the reasons set forth below, the court denies plaintiff's motion and grants defendant's motion. Because plaintiff has not presented a viable claim in this court, her complaint must be dismissed.

# I. BACKGROUND

## A. Plaintiff's Service in the Air Force

Plaintiff first enlisted in the Air Force on March 22, 2000.[1]  AR 16.  She served as a Fitness Specialist, with an Air Force Specialty Code ("AFSC") of 3M051.[2]  Id. at 93, 95, 97.  Her service was exemplary, as reflected in her Enlisted Performance Reports ("EPRs") and by her receipt of three Air Force Achievement Medals.  Id. at 93-101.  After four years of active service, plaintiff was transferred to the Air Force Reserve for an additional four years of inactive service.  Id. at 16-17.  On February 17, 2008, plaintiff was honorably discharged from the Air Force at the rank of Senior Airman.  Id. at 17.

Almost two years later, on January 25, 2010, plaintiff reenlisted in the Air Force to work as a recruiter.  Id. at 18, 158-60, 214-15.  She maintained the rank of Senior Airman, with a pay grade of E-4.  Id. at 158-59.  In conjunction with her recruiting assignment, plaintiff was given a control AFSC ("CAFSC") of 8R000.[3]  See id. at 140 (indicating that CAFSC 8R000 pertains to the recruiting specialty), 158-59 (reflecting that plaintiff was given a CAFSC of 8R000 in her January 25, 2010 assignment order); accord id. at 244 ("[Plaintiff] should have been awarded the CAFSC as a recruiter when she was brought back to active duty.").  But see id. at 140

---

[1]  The court derives the facts in this section from the administrative record ("AR") and relevant statutes and Air Force regulations.

[2]  Pursuant to Air Force regulations:

> The objective of the military personnel classification system is to identify duties and tasks for every position needed to accomplish the Air Force mission.  The system is designed to identify qualifications and abilities necessary to accomplish these duties and tasks, as well as provide clear and visible career progression patterns.  It links duties and tasks into cohesive job clusters that are used to match personnel requirements with personal aptitudes, attributes, and qualifications.  The classification system also provides concise award, upgrade, and retention criteria for career progression.

Air Force Instruction ("AFI") 36-2101, Classifying Military Personnel (Officer and Enlisted) ¶ 1.1 (June 14, 2010).  "The classification system groups related work requirements (position) into Air Force Specialties . . . ."  Id. ¶ 1.2.1.  "When individuals meet all of the mandatory qualifications of the specialty and have shown skill level qualification in all tasks of the positions in which assigned, they are considered qualified for award of the Air Force Specialty Code . . . ."  Id. ¶ 1.2.2.

[3]  "Former Air Force personnel in technical training are awarded the 1-skill level AFSC in the specialty they are enrolled in at technical training as their CAFSC."  AFI 36-2101, ¶ 2.3.2.

("[Plaintiff] should have been assigned CAFSC 9A000 (student/training) until completion of recruiter tech training (8R000)."). Plaintiff was assigned to the 347th Air Force Recruiting Squadron in Chicago, Illinois, but was first required to report to Lackland Air Force Base, Texas, for a temporary duty assignment to attend Air Force Recruiting School. Id. at 158-59, 192; cf. id. at 158-59 (reflecting that plaintiff's January 25, 2010 assignment order was generated at the Jacksonville, Florida, Military Entrance Processing Station).

While at Air Force Recruiting School, plaintiff failed one of her sales labs, resulting in her being washed back to another recruiting class. Id. at 27. She advised a superior that one of her classmates was "unfairly passed through the same sales labs" by the instructors. Id. at 27; accord id. at 119. That classmate, plaintiff reports, eventually failed out of Air Force Recruiting School. Id. at 73; accord id. at 119. Plaintiff graduated from Air Force Recruiting School on April 9, 2010. Id. at 27, 140.

On April 19, 2010, plaintiff reported to the 347th Air Force Recruiting Squadron in Milwaukee, Wisconsin. Id. Upon reporting, plaintiff claims that she was advised by her superintendent, Senior Master Sergeant Knute Headley, that he had received a letter from the Air Force Recruiting School describing her complaint regarding her classmate. Id. at 27-28; see also id. at 192, 202, 238 (containing the July 2013 findings of an investigator for the Air Force Recruiting Service's inspector general that (1) the document that plaintiff alleged was a letter to the 347th Air Force Recruiting Squadron was actually a report card prepared for all graduates of Air Force Recruiting School pursuant to standard operating procedure and (2) plaintiff's report card could not be obtained due to the passage of time). According to plaintiff, Senior Master Sergeant Headley told her that with her "type of mentality came consequences." Id. at 28.

Plaintiff indicates that she then asked Senior Master Sergeant Headley for an advance of her basic allowance for housing. Id. at 73. She avers that Senior Master Sergeant Headley referred her to Master Sergeant Mark Buchholz, who assured her that she would receive the advance "in a couple of days." Id.

Finally, plaintiff claims that she was told by Senior Master Sergeant Headley and her flight chief, Master Sergeant Joseph S. Minor, that she would be testing for promotion to Staff Sergeant during that year's May-June test cycle. Id. at 28. This information was consistent with what she had been told by her recruiter on January 5, 2010. Id. at 112, 114.

According to plaintiff, on April 22, 2010, not having received an advance of her basic allowance for housing, she drove to Scott Air Force Base, Illinois, to discuss the issue with an individual in the finance department. Id. at 28, 73. Plaintiff avers that during that meeting, she learned that neither Senior Master Sergeant Headley nor Master Sergeant Buchholz had forwarded her paperwork to the finance department. Id.

Plaintiff began her recruiting assignment in Chicago Heights, Illinois, on May 1, 2010. Id. at 28. Shortly thereafter, Master Sergeant Minor advised her, without explanation, that she

would not be able to test for promotion to Staff Sergeant until 2011. Id. Plaintiff sought an explanation for the delay in October 2010, but none was forthcoming. Id.

Although plaintiff was a successful recruiter, id. at 87, 90-92, 119, she felt mistreated at the recruiting office, see generally id. at 74. Specifically, she believed that she was treated differently from her flight mate (by being given substandard equipment and higher recruiting goals) and was sexually harassed by another flight mate. Id.

On December 16, 2010, Master Sergeant Minor directed plaintiff to meet with him in his office the following morning to discuss plaintiff's alleged misuse of a government-owned vehicle and telephone. Id. at 68, 74. However, plaintiff refused to meet with him without legal representation. Id. Plaintiff also did not attend a mandatory flight meeting scheduled for that same morning in Matteson, Illinois. Id. at 68. Master Sergeant Minor and others attempted to contact plaintiff from December 17, 2010, to December 19, 2010, without success. Id. All of the messages left for plaintiff directed her to report to a superior's office in Oak Creek, Wisconsin, on December 20, 2010. Id. She did not do so. Id. Additional attempts to locate plaintiff on December 20, 2010, were unsuccessful. Id.

Unbeknownst to her colleagues and superiors, plaintiff boarded a Greyhound bus on December 18, 2010, bound for Jacksonville, Florida, where her United States congresswoman had an office. Id. at 74, 79. Plaintiff intended to file a complaint with her congresswoman detailing the unequal treatment she experienced at Air Force Recruiting School, as well as the unequal treatment and retribution she experienced during her recruiting assignment. Id. at 74, 79-81. She lodged her complaint in person on December 20, 2010. Id. at 74.

The following day, plaintiff went to Moody Air Force Base, Georgia, and met with Staff Sergeant Phillip D. Bradford, a paralegal at the Area Defense Counsel's office. Id. at 170. She advised Staff Sergeant Bradford that she was absent without leave and was there to turn herself in. Id. After consulting with a superior officer, Staff Sergeant Bradford advised plaintiff that she "would be better represented by an Area Defense Counsel closer to her duty location." Id. He therefore called Area Defense Counsel at Scott Air Force Base for assistance, and arranged for plaintiff to speak with a paralegal from that office. Id. Plaintiff asserts that the paralegal consulted with an attorney—Captain Rebecca Otey—and then conveyed Captain Otey's advice that plaintiff "sneak back" to her duty station in Chicago Heights and resume her regular daily duties. Id. at 30. However, plaintiff lacked the necessary funds to return to Illinois. Id. at 75. She therefore departed Moody Air Force Base and returned to Florida. Id. at 74-75. According to plaintiff, the following day—December 22, 2010—she received a telephone call from Captain Otey who, upon learning that plaintiff did not have the money to return to Illinois, advised plaintiff to contact her commander, Lieutenant Colonel Mark Formica, and explain to him that she was absent without leave and did not possess the financial means to return to Illinois. Id. at 75. Plaintiff eventually obtained the money that she needed to fund her return to Illinois, and on December 28, 2010, turned herself in to Captain Otey at Scott Air Force Base. Id. at 29, 75; see

also id. at 106 (reflecting that plaintiff "returned to military control and [was] placed into military confinement on 28 Dec 2010").

On December 29, 2010, plaintiff received two letters of reprimand from Lieutenant Colonel Formica. Id. at 82, 84. One concerned her unauthorized use of a government-owned vehicle, and provided:

> [Y]our I-PASS records . . . disclosed that between on or about 9 November 2010 and on or about 18 November 2010, you used your assigned Government Owned Vehicle (GOV) during the hours of between 2200L and 0500L. This is in violation of [an Air Force regulation that provides:] "Government vehicles will not be used between the hours of 2200 and 0500 without the permission of the operator's supervisor." You were trained and acknowledged the training on this policy when you first arrived in the unit.

Id. at 82. The other concerned her unauthorized use of a government telephone, and provided:

> [Y]our Government Office Telephone records . . . disclosed that on or about 20 May 2010 to on or about 20 December 2010 you used your assigned Government Office Telephone to make unauthorized personal phone calls outside your recruiting zone. This is in violation of [an Air Force regulation that provides:] "The government does not incur any long distance per-call charges above and beyond normal local charges[.]" You were trained and acknowledged the training on this policy when you first arrived in the unit.

Id. at 84.

The following day, December 30, 2010, Master Sergeant Minor requested the initiation of proceedings against plaintiff under Article 15 of the Uniform Code of Military Justice as a consequence of her absence without leave. Id. at 29, 68. Article 15 allows commanding officers to impose nonjudicial punishment on service members for minor offenses. 10 U.S.C. § 815 (2006). On January 4, 2011, Lieutenant Colonel Formica acted favorably on Master Sergeant Minor's request and made an offer of nonjudicial punishment to plaintiff. AR 69. In his offer, Lieutenant Colonel Formica alleged two violations of Article 86 of the Uniform Code of Military Justice: (1) plaintiff's failure to report to her place of duty in Matteson on December 17, 2010, and (2) plaintiff's failure to report to her place of duty in Chicago Heights from December 20, 2010, to December 28, 2010. Id. at 69-70.

On January 7, 2011, plaintiff elected to proceed under Article 15. Id. at 69. She indicated that she had consulted with an attorney and waived her right to court-martial. Id. She also provided a written presentation to Lieutenant Colonel Formica in which she described her negative experiences at Air Force Recruiting School and her recruiting office, indicated that the

reason that she was absent without leave was to submit a complaint to her congresswoman, and apologized for her "poor judgment" in going absent without leave. Id. at 73-75.

Also on January 7, 2011, plaintiff submitted written responses to her two letters of reprimand. Id. at 83, 85. With respect to her unauthorized use of a government-owned vehicle, plaintiff explained that one of the trips at issue involved her taking a recruit to a job. Id. at 83. With respect to her unauthorized used of a government telephone, plaintiff stated that the calls were to check on her family, and asserted that she had not been briefed on the standards for using her government telephone. Id. at 85.

Lieutenant Colonel Formica "conducted an in-house investigation" of plaintiff's sexual harassment allegations on January 10, 2011. Id. at 30; accord id. at 195 (indicating, however, that the investigation began on January 14, 2011), 199-200. Apparently, Lieutenant Colonel Formica concluded that plaintiff's claims were not substantiated.[4] Id. at 199. Plaintiff asserts that this conclusion was not disclosed to her. Id. at 30.

Subsequently, on January 12, 2011, plaintiff provided additional written evidence to Lieutenant Colonel Formica in regard to her Article 15 proceedings. Id. at 170-72. This evidence consisted of a memorandum from Staff Sergeant Bradford confirming that she went to Moody Air Force Base on December 21, 2010, to turn herself in; a copy of a privacy release form that she submitted with her congressional complaint; and a memorandum containing her request that Lieutenant Colonel Formica not consider her absent without leave beyond December 21, 2010, based on Staff Sergeant Bradford's memorandum. Id.

That same day, notwithstanding plaintiff's submission, Lieutenant Colonel Formica determined that plaintiff violated the two provisions of Article 86 of the Uniform Code of Military Justice that he had previously identified. Id. at 69-70. He therefore imposed the following punishment: "Reduction to the grade of Airman, with reduction below Airman First Class suspended until 11 July 2011, after which time it will be remitted without further action, unless sooner vacated. The new date of rank for Airman First Class is 12 January 2011." Id. at 70; see also id. at 11 (reflecting that plaintiff's demotion to Airman First Class was accompanied by a reduction of pay grade to E-3). Lieutenant Colonel Formica also formally reprimanded plaintiff for her behavior. Id. at 72. Plaintiff indicated on January 18, 2011, that she would not appeal Lieutenant Colonel Formica's decision and punishment. Id. at 70. Further, two Air Force

---

[4] No documentation of the investigation is included in the administrative record. Rather, more than two years after the fact, an investigator for the inspector general of the Air Force Recruiting Office averred, based on undisclosed evidence (referred to as "Sec I Tab K-11, RCA, Atch 12, Clarification [redacted]" and "Sec III Tab [redacted] pg 9, lines 21-33"), that the investigation occurred, that plaintiff's claims were found to be unsubstantiated, and that the investigation was found to be legally sufficient. See AR 195-96, 199-200 (redactions in original). The investigator expressly indicated that he or she was unable to obtain a copy of the investigation report. Id. at 199.

attorneys reviewed Lieutenant Colonel Formica's decision and determined that the record was legally sufficient. Id.

Plaintiff was contacted by Senior Master Sergeant Noel K. Sharp from the Air Force Recruiting Service's inspector general's office on January 25, 2011. Id. at 30-31, 51. Senior Master Sergeant Sharp advised plaintiff that her congressional complaint had been forwarded to that office for review and requested a telephone conversation with plaintiff to discuss her complaint. Id. Plaintiff contends that she called Senior Master Sergeant Sharp the following day and, during their conversation, claimed that she had been denied the opportunity to test for promotion to Staff Sergeant during the 2010 May-June test cycle. Id. at 31. Plaintiff avers that Senior Master Sergeant Sharp stated that the claim would be incorporated into her complaint. Id. An investigator at the Air Force Recruiting Service's inspector general's office stated, two years later, that plaintiff's complaint was "forwarded to command for resolution," and that the command's response was subsequently purged in accordance with Air Force regulation. Id. at 195, 203. Plaintiff never obtained the results of the investigation of her congressional complaint. Id. at 49.

In the meantime, on February 7, 2011, Lieutenant Colonel Formica notified plaintiff that she was being processed for administrative separation from the Air Force pursuant to an Air Force regulation that allows for the involuntary separation of airmen from the Air Force for minor disciplinary infractions.[5] Id. at 31, 86 (citing AFI 36-3208, Administrative Separation of

---

[5] The administrative record contains plaintiff's acknowledgment that she received the "notification memorandum" on February 7, 2011, AR 86, but does not contain the "notification memorandum" itself. However, an investigator for the inspector general of the Air Force Recruiting Office stated, two years later, that "[a]ccording to the discharge paperwork, [plaintiff] was recommended for discharge for a number of disciplinary issues including" the two letters of reprimand and the Article 15 nonjudicial punishment. Id. at 233. The investigator further remarked:

> [S]ince [plaintiff] was reduced to the rank of [Airman First Class] as the result of the Article 15 punishment, she no longer met the criteria (mandatory minimum rank/grade requirements) to perform duties as an Air Force Recruiter. . . . The rank qualification for an Enlisted Accession Recruiter is Senior Airman through Master Sergeant . . . .
>
> . . . .
>
> . . . . Since she did not possess another AFSC and did not meet the minimum rank requirement to remain a recruiter, [redacted] recommended [plaintiff] for discharge.

Id. at 234 (redaction in original).

-7-

Airmen ¶ 5.49 (July 9, 2004) ("A pattern of misconduct consisting solely of [minor disciplinary] infractions in the current enlistment makes an airman subject to discharge. The infractions . . . may involve failure to comply with nonpunitive regulations or minor offenses under the [Uniform Code of Military Justice]. Infractions of this type result, as a rule, in informal (reduced to writing) or formal counselings, letters of reprimand, or Article 15 nonjudicial punishments.")). Plaintiff acknowledged receipt of the "notification memorandum," as well as her rights to consult counsel and submit statements on her own behalf, that same day. Id. at 86.

Plaintiff alleges that she consulted with her attorney, Captain Daphne LaSalle, on February 8, 2011. Id. at 31. According to plaintiff, Captain LaSalle advised her that she was not entitled to a hearing before an administrative discharge board during her involuntary separation proceedings. Id.

On February 9, 2011, plaintiff submitted a memorandum to Lieutenant Colonel Formica in response to the "notification memorandum." AR 87-88. She apologized for the actions that led to the letters of reprimand and the Article 15 nonjudicial punishment, and requested that she be retained in the Air Force based on her prior contributions and accomplishments. Id.

The following day, plaintiff contacted the Air Force Recruiting Service's inspector general's office to allege that she was the victim of reprisal by Lieutenant Colonel Formica for making protected communications. Id. at 31, 196. An investigation apparently ensued.[6] See id. at 196. Subsequently, on February 22, 2011, Senior Master Sergeant Sharp advised plaintiff that she was protected under the United States Department of Defense's whistleblower protection policy while her claim of reprisal was being investigated. Id. at 52 (citing 10 U.S.C. § 1034). It appears that the inspector general of the Air Force Recruiting Service ultimately concluded that plaintiff's claim of reprisal was not substantiated.[7] Id. at 196.

Notwithstanding her submission to Lieutenant Colonel Formica, plaintiff was discharged from the Air Force on March 4, 2011, for "misconduct (minor infractions)." Id. at 18. The character of her service was described as "under honorable conditions - (general)." Id. Prior to her discharge, plaintiff was not provided the opportunity to appear before an administrative discharge board. Id. at 11.

---

[6] No documentation of the investigation is included in the administrative record. Rather, more than two years after the fact, an investigator for the inspector general of the Air Force Recruiting Office averred, based on undisclosed evidence (referred to as "Sec I Tab K-1m, RCA, Atch 13, Case File Worksheet"), that an investigation occurred and that the Air Force Recruiting Office's inspector general "determined that reprisal did not occur and dismissed the complaint even though there was prima facie evidence of reprisal." AR 196.

[7] See supra note 6.

## B. Plaintiff's Application for the Correction of Her Military Records

Plaintiff filed an application for the correction of her military records with the AFBCMR on March 29, 2012.[8] Id. at 11-12. In her application, she claimed that her involuntary discharge was unjust and that she should be reinstated to her position as a recruiter with a CAFSC of 8R000 because pursuant to Air Force regulation, she was entitled to, but not provided, a hearing before an administrative discharge board during her involuntary separation proceedings. Id. at 11 (citing AFI 36-3208, ¶ 6.2.2 (providing that an airman "recommended for discharge . . . must be offered an opportunity for hearing by an administrative discharge board if" the airman "has 6 years or more total active and inactive military service at the time the discharge processing starts")); accord id. at 44.

The AFBCMR obtained two advisory opinions to assist in its resolution of plaintiff's application. Id. at 34-36. One, dated May 14, 2012, was prepared by an official at the Retirements and Separations Branch of the Directorate of Personnel Services at the Air Force Personnel Center, and addressed two aspects of plaintiff's discharge from the Air Force.[9] Id. at 34-35. The official first opined:

> Based on [plaintiff's] overall performance, the discharge authority approved an Under Honorable Conditions (General) discharge. According to [Air Force regulation], a general discharge is appropriate when "significant negative aspects of the airman's conduct or performance of duty outweighs positive aspects of the airman's military record." [Plaintiff's] misconduct in this case clearly outweighs the positive aspects of her service. The Commander stated that [plaintiff] had continually shown through her actions that she cannot be trusted. [Plaintiff] received two [letters of reprimand] for misuse of government property; has failed

---

[8] On this same date, plaintiff voluntarily withdrew the application that she had filed with the Air Force Discharge Review Board in December 2011. AR 19-20.

[9] Oddly, there are two versions of this letter in the administrative record, both dated May 14, 2012. See AR 34-35, 54-55. The "Discussion" and "Recommendation" sections of the letter provided to plaintiff for her review, see id. at 55, differ significantly from the "Discussion" and "Recommendation" sections in the version of the letter considered by the AFBCMR, see id. at 35. Specifically, the letter provided to plaintiff indicated that plaintiff was not entitled to a hearing before an administrative discharge board and contained a recommendation that plaintiff's application be denied. Id. at 55. In contrast, the letter considered by the AFBCMR indicated that plaintiff was entitled to a hearing before an administrative discharge board and contained a recommendation that plaintiff's request for such a hearing be granted. Id. at 35. No explanation for the discrepancy has been provided to the court. However, because the AFBCMR considered the version of the letter that was favorable to plaintiff and agreed that plaintiff was entitled to an administrative discharge board hearing, see id. at 138, plaintiff was not prejudiced by the discrepancy.

to go to her appointed place of duty; and had absented herself from her place of duty. [Plaintiff] demonstrated a lack of respect for authority and a total disregard for policies and procedures constantly throughout her military career. [Plaintiff's] incidents of misconduct disrupted good order, discipline, and morale within the military community; hence, discharge was appropriate.

Id. at 35. The official then opined that, pursuant to AFI 36-3208, ¶ 6.2.2, plaintiff "qualified for an administrative discharge board hearing during her involuntary discharge proceeding." Id. Accordingly, the official recommended that plaintiff's request for such a hearing be granted. Id.

The second advisory opinion, dated August 2, 2012, was prepared by a superintendent in the Recruiting Operations office of the Air Force Recruiting Service, and addressed plaintiff's ability to be reinstated to active duty as a recruiter. Id. at 36. The superintendent opined that plaintiff was not qualified for reentry into the Air Force for two reasons. Id. First, the superintendent noted that the character of plaintiff's discharge–"under honorable conditions - (general)"–prevented her reenlistment. Id. Second, the superintendent explained that High Year of Tenure ("HYT") requirements would also prevent plaintiff's reenlistment because they preclude the reenlistment of individuals, like plaintiff, who are at or below the E-4 pay grade and have more than four years of active service. Id. In addition, the superintendent stated, the HYT requirements would prevent plaintiff's reenlistment even if the AFBCMR restored plaintiff's pay grade to E-4. Id. The superintendent concluded that plaintiff's request for reinstatement to the Air Force should be denied. Id.

On August 3, 2012, the AFBCMR forwarded the two advisory opinions to plaintiff for her review and advised plaintiff that she had thirty days in which to comment on the advisory opinions or provide additional evidence in support of her application. Id. at 37. Plaintiff took advantage of the opportunity, and provided the AFBCMR with a ninety-page submission–containing both responses to the advisory opinions and additional evidence–in which she recounted her experiences at Air Force Recruiting School and her recruiting office. See generally 38-131. Of particular note, plaintiff contended in her response to the May 14, 2012 advisory opinion that a letter of reprimand was too severe a punishment for her first-time offenses of misuse of a government-owned vehicle and misuse of a government telephone. Id. at 59-60. She further asserted that the language of her Article 15 nonjudicial punishment gave her "the false perception that [she] would be granted probation and rehabilitation until 11 July 2011, without further action." Id. at 61; accord id. at 50. Also of note, the additional evidence that plaintiff provided to the AFBCMR included a memorandum in which plaintiff averred that she had filed a complaint with her congresswoman, that the Air Force Recruiting Service's inspector general's office had initiated an investigation, that Lieutenant Colonel Formica became aware of her congressional complaint during her Article 15 nonjudicial punishment proceedings, that she had been afforded whistleblower protection, and that she believed that Lieutenant Colonel Formica initiated involuntary separation proceedings and ultimately discharged her in reprisal. Id. at 48-50.

-10-

The AFBCMR issued a decision on plaintiff's application on January 23, 2013. Id. at 134-39. It first concluded that there was "[s]ufficient relevant evidence . . . to demonstrate the existence of an error or injustice regarding [plaintiff's] contention she was denied her right to meet an Administrative Discharge Board . . . in conjunction with her involuntary discharge." Id. at 138. The AFBCMR then addressed the allegations of reprisal set forth in plaintiff's supplementary materials, noting that "while the evidence of record indicates [plaintiff] timely filed a complaint with the Inspector General, it appears as though an investigation into her allegations was never completed in accordance with the provisions of 10 USC 1034." Id. It therefore determined:

> [W]hile we find the evidence is sufficient for us to conclude that she was deprived of certain due process rights related to her discharge, in order for the Board to render full and fair consideration of this case, we believe [plaintiff's] case should be referred to the Inspector General for an investigation under the authority granted to this Board on this issue. Accordingly, it is our determination that a final decision not be rendered on the [plaintiff's] requests until such time as the Inspector General conducts an investigation at our request and the report of investigation . . . is provided to us for review. . . . Upon receipt of the [report of investigation], or if for some reason the [Inspector General] should determine an investigation cannot be conducted, we reopen [plaintiff's] case and resume consideration of her requests.

Id. Accordingly, the AFBCMR administratively closed plaintiff's case, id. at 132, 138, and referred plaintiff's claims of reprisal to the Air Force's inspector general, id. at 132-33.

While plaintiff's case was closed administratively, the AFBCMR received two additional advisory opinions.[10] Id. at 140-43. The first, dated May 20, 2013, was prepared by an official at the Enlisted Promotions and Military Testing Branch of the Air Force Personnel Center, and concerned plaintiff's contention that she was denied the opportunity to test for promotion to Staff Sergeant during the 2010 May-June test cycle (referred to in the advisory opinion as "cycle 10E5"). Id. at 140-41. The official initially explained that members of the Air Force are considered "nonweighable" for promotion if a promotion factor—such as a test, an EPR, or an AFSC—is missing or incorrect. Id. at 140. The official then noted issues with two promotion factors that adversely affected plaintiff's eligibility for promotion consideration:

> [Plaintiff] was "nonweighable" based on the fact that she did not have a control AFSC (CAFSC) updated in the system. Without an assigned CAFSC, the test

---

[10] It is unclear from the evidence in the administrative record why the AFBCMR continued to receive advisory opinions, and why it forwarded those advisory opinions to plaintiff for her review and comment, while plaintiff's case was administratively closed. Plaintiff did, sometime after March 22, 2013, submit a request to the AFBCMR that her case be reopened, see AR 25-32, but there is no evidence that the AFBCMR acted on this request.

control officer would not know what test to administer. She was also "nonweighable" because she did not have a current EPR with a close out date within the past five years from the promotion eligibility cutoff date . . . for the cycle (31 Mar 10).

Id. With respect to the former issue, the official wrote:

> Although [plaintiff] was given her previous primary AFSC (PAFSC) of 3M051 when she was accessed, she lost her control AFSC (CAFSC) since it had been more than 4 years since she last held it . . . . However, she should have been assigned CAFSC 9A000 (student/training) until completion of recruiter tech training (8R000). Had the 9A000 AFSC been updated, or our office notified when her 8R000 CAFSC was updated, [plaintiff] would have tested . . . only as a 00XXX (retrainee). She would have remained "nonweighable" until she had at least 60 days supervision and an EPR was rendered.

Id.; see also id. (noting that plaintiff's CAFSC was not updated until she graduated from Air Force Recruiting School on April 9, 2010). With respect to the latter issue, the official explained:

> [In accordance with Air Force regulation], EPRs covering the last five years (maximum of 10 reports) are used to compute the EPR time-weighted factor score. All eligibles are required to have an EPR that closes out within 5 years of the [promotion eligibility cutoff date] on file to compete for promotion. If a member does not have an EPR on file, they cannot be considered for promotion until their next projected EPR closes out or until a directed by [Headquarters Air Force] EPR is completed for promotion consideration. At that time, the member will be considered supplementally.

Id.

In addition to determining that plaintiff was "unweighable" for promotion, the official addressed the effect that plaintiff's Article 15 nonjudicial punishment had on her promotion eligibility:

> [Plaintiff] received an Article 15 on 12 Jan 11 and was reduced to the rank of [Airman First Class]. Even if she had tested for cycle 10E5 and was selected, her promotion sequence number . . . would have to have been 1.00 - 5446.0 (1 Sep 10 - 1 Jan 11) in order for her to pin-on [Staff Sergeant] prior to the Article 15 action. If she received a [promotion sequence number] after 5446.0, she would have lost her line number. In either case, the Article 15 resulted in loss of rank.

Id. at 141. The official concluded:

-12-

> Since [plaintiff] entered active duty on 25 Jan 10, a [CAFSC] should have been
> assigned and updated into the system by the time testing for cycle 10E5
> commenced in May.  She would have remained nonweighable for the cycle until
> an EPR was rendered.  Unfortunately, there is no way for her to be supplementally
> considered for promotion to [Staff Sergeant] due to the fact that she never
> tested/does not have a test on file and is no longer on active duty.

Id.

The second advisory opinion, dated June 4, 2013, was prepared by the chief of the
Military Justice Division of the Air Force Legal Operations Agency and concerned plaintiff's
nonjudicial punishment.  Id. at 142-43.  First, the chief noted that plaintiff did not appeal her
commander's decision imposing punishment of a reduction of grade and a reprimand, and that
the Article 15 proceedings were "reviewed and determined to be legally sufficient."  Id. at 142.
Second, the chief indicated that plaintiff did not challenge her nonjudicial punishment in her
application to the AFBCMR but, in fact, "acknowledge[d that] the nonjudicial punishment was a
result of her poor judgment and that it was a rehabilitative tool."  Id.  The chief then explained:

> [A] commander considering a case for disposition under Article 15 exercises
> largely unfettered discretion in evaluating the case, both as to whether punishment
> is warranted and, if so, the nature and extent of punishment.  The exercise of that
> discretion should generally not be reversed or otherwise changed on appeal or by
> the Board absent good cause.

Id. at 143.  Ultimately, the chief concluded:

> The commander at the time of the Article 15 had the best opportunity to evaluate
> the evidence for this action.  With that perspective, the commander exercised the
> discretion that [plaintiff] granted him when [plaintiff] accepted the Article 15s
> [sic] and found nonjudicial punishment appropriate.  The legal review process
> showed that the commander did not act arbitrarily or capriciously in making this
> decision.

Id.

The AFBCMR forwarded the two new advisory opinions to plaintiff on June 6, 2013, for
her review and comment.  Plaintiff responded with two eleven-page submissions that included
comments on the advisory opinions and supporting evidence.  See generally id. at 151-72.  In her
response to the May 20, 2013 advisory opinion regarding her eligibility for promotion
consideration, plaintiff made the following assertions:  (1) she did have a CAFSC with an
effective date of January 25, 2010; (2) she should have received a special EPR from Air Force
Headquarters; and (3) if the Air Force had complied with the testing and promotion procedures
set forth in its regulations, she would have tested for promotion to Staff Sergeant during the 2010

May-June test cycle and would not have committed the offenses that were the subject of her Article 15 proceedings. Id. at 153-57. And, in her response to the June 15, 2013 advisory opinion regarding her Article 15 nonjudicial punishment, see id. at 164-68, plaintiff made the following assertions:  (1) she did allege an injustice with respect to her receipt of nonjudicial punishment,[11] id. at 168; and (2) she should not have been considered absent without leave beyond December 21, 2010, when she attempted to turn herself in at Moody Air Force Base, id. at 167 (citing AFI 36-2911, Desertion and Unauthorized Absence ¶ 4.3.1 (Oct. 14, 2009) (providing that "[a]n absentee's return to military control occurs at the date and hour that" the "absentee surrenders to . . . military authorities" or "otherwise comes under the control of military personnel")).

The Air Force Recruiting Service's inspector general completed its investigation of plaintiff's claims of reprisal in July 2013 and, based on what can be discerned from the administrative record, prepared a comprehensive report of investigation.[12] Id. at 190-259. The investigating officer concluded:

> The preponderance of the evidence in this case showed there were sound, logical reasons for the actions taken against [plaintiff] based on her admitted violations of the [Uniform Code of Military Justice]. The [letters of reprimand] stemmed from her misuse of government property and her refusal to meet with [Master Sergeant Minor] when ordered to discuss the matter. The follow-on Article 15 resulted from [plaintiff's] refusal to follow a lawful order to appear and for her unauthorized absence from her place of duty. The separation that ensued was the administrative follow-on to the preceding disciplinary actions. Further, the evidence in this case demonstrated that [plaintiff's] inability to test for promotion stemmed from an unfortunate combination of the timing of her return to active duty during the promotion cycle and an administrative error that occurred during her in-processing [at] the [347th Air Force Recruiting Squadron] which rendered her "non-weighable" for promotion. This particular matter is currently being addressed by the AFBCMR.

---

[11] As described above, plaintiff did not allege an injustice with respect to her Article 15 nonjudicial punishment in her original application for the correction of her military records. See AR 11-12; accord id. at 44. She did, however, raise such a claim in her supplementary materials. See id. at 59-61.

[12] Only seventy-four pages of the report of investigation–constituting Section II, Tabs A through E–are in the administrative record. See AR 190-263. Based on the contents of this excerpt, the full report of investigation also includes Sections I and III, both with multiple tabs. See, e.g., id. at 193. It also bears noting that the portion of the report included in the administrative record contains substantial redactions. See id. at 190-263.

-14-

> In conclusion, the staff at the Air Force Recruiting School and the [347th Air Force Recruiting Squadron] leadership did not reprise against [plaintiff], and none of the allegations in this case were substantiated.

Id. at 259. The Air Force's inspector general subsequently approved the report, with one minor change. Id. at 260-63. The report was then forwarded to the inspector general for the United States Department of Defense, who approved it on August 21, 2014. Id. at 4.

The AFBCMR, in a September 25, 2014 letter, advised plaintiff that it had received a copy of the inspector general's report of investigation and was therefore reopening her case. Id. at 183; see also id. at 4 (indicating that the AFBCMR attached a redacted copy of the report of investigation to its letter). The AFBCMR further advised plaintiff that it might find it necessary to seek additional advisory opinions. Id. at 183. Indeed, the AFBCMR received an advisory opinion from a staff judge advocate at the Air Force Personnel Center, dated February 18, 2015, addressing "how to implement a correction of record in conjunction with" the AFBCMR's preliminary finding that it was an error or injustice for the Air Force to deprive plaintiff of the opportunity to appear before an administrative discharge board during her involuntary separation proceedings. Id. at 184-85. The staff judge advocate provided:

> Having been discharged from the Air Force on 4 March 2011, [plaintiff's] status today is that of a civilian with no military connection at all. As a consequence, she could not be "recalled" to active duty for hearing [before an administrative discharge board], as she is not in a capacity (like reserve or retired) that would permit recall. For the same reason, we can find no authority to otherwise place her on active duty directly from a civilian status. Moreover, there is no authority to provide her a discharge board in her capacity as a civilian–as the governing instruction . . . applies only to enlisted military members. Thus, the only means we can discern for the Board to afford [plaintiff] a discharge board would be to set aside the 2011 discharge as having been accomplished in error, and reinstate her to active duty effective 4 March 2011.

> This option, however, does not come without some serious legal and practical problems. First, there is the problem that due to [HYT] restrictions . . . [plaintiff] is no longer qualified to serve as a recruiter. Thus, where would she be reinstated, and in what career field? . . . There is the additional problem that because of the extensive delays in this case resulting from multiple [inspector general] investigations, such a solution would entitle [plaintiff] to back pay for four plus years of Air Force service that was not in fact performed–a tremendous undeserved windfall. It would also bring with it questions of promotion eligibility and potential HYT for this period of time. This is in addition to all the practical problems of trying to run a board four plus years after the fact: Who would convene the board? Where would it be held? Are the relevant players/witnesses/

command personnel still available? Is it really possible to provide the full due
process that was denied so long after the fact?

> The other option we see is for the Board to set aside the basis and
character of her 2011 discharge and substitute an honorable discharge based on
Secretarial discretion (or some other reason not associated with discharge for
cause). In our opinion, this would constitute a fair and just resolution given the
time, problems and all the circumstances associated with this case. In making this
recommendation, we recognize that [plaintiff's] continued misconduct and the
attitude of her supervisory and command structure would render retention by a
discharge board a remote possibility–certainly not more likely than not. And even
though we believe an honorable discharge would also likely not be recommended,
we can see this as at least a possible outcome of a board. Thus, to substitute a
no-fault basis for separation in addition to approving an honorable discharge, in
our view, would provide more than a fair outcome for [plaintiff].

Id. at 184-85. The AFBCMR forwarded this advisory opinion to plaintiff on February 20, 2015. Id.
at 186. Plaintiff responded seven days later, declining to comment on its contents. Id. at 187-
88.

The AFBCMR issued its final decision on plaintiff's application on March 31, 2015. Id.
at 1-10. It described the history of the case, the contents of the advisory opinions, and plaintiff's
submissions. Id. at 3-7. It also identified plaintiff's contentions: (1) plaintiff was unfairly
denied an administrative discharge board during her involuntary separation proceedings; (2)
plaintiff made protected communications regarding her Air Force Recruiting School classmate
that resulted in (a) a hostile work environment in her recruiting office, (b) her decision to go
absent without leave, and (c) her discharge from the Air Force; (3) plaintiff's Article 15
proceedings were defective because (a) the charges were erroneous, (b) she was not absent
without leave beyond December 21, 2010, (c) the punishment was crafted to give her the false
impression that "she would be granted probation and rehabilitation" and not demoted, and (d) the
letters of reprimand were "too harsh"; and (4) plaintiff was improperly denied the opportunity to
test for promotion to Staff Sergeant in 2010. Id. at 2-3. The AFBCMR concluded:

> Insufficient relevant evidence has been presented to demonstrate the existence of
an error or injustice warranting corrective action. While there are admitted errors
in the case, we find it more likely than not that [plaintiff] would have received the
same outcome she ultimately did even if the processing of her case had been
error-free. As such, we decline to recommend any correction to her record. We
took notice of [plaintiff's] complete submission, to include her rebuttal responses
to the advisory opinions, in judging the merits of the case; however, regarding her
contentions, we believe the denial of an [administrative discharge board] was
harmless error; reprisal was not a motive in her disciplinary actions; her Article 15

was legally sufficient; and, given her substantiated misconduct, denying her the opportunity to test for promotion in 2010 had no effect on her advancement.

In particular, we agree with [the June 4, 2013 advisory opinion] that [plaintiff's] commander did not act arbitrarily or capriciously in rendering non-judicial punishment, and with the finding of the Air Force [inspector general] that her commander recommended her for administrative separation based on substantiated acts of misconduct and a pattern of minor disciplinary infractions, and not because she made protected communications. After a thorough review of the evidence of record and [plaintiff's] complete submission, we do not find the evidence presented sufficient for us to question the underlying basis for [plaintiff's] actions or to persuade us she is the victim of an injustice. It does appear [plaintiff] was improperly denied an [administrative discharge board] during her discharge process, and we note the recommendation [contained in the February 18, 2015 advisory opinion] to change the character of [plaintiff's] discharge to Honorable; but we also share [the] belief that an [administrative discharge board] would likely not have recommended an honorable service characterization. Moreover, the review of [plaintiff's] case at the Department of Defense level, through the [inspector general] process, represents a far higher level of scrutiny than most airmen discharged for misconduct ever receive. Therefore, we are not convinced the denial of the [administrative discharge board], in and of itself, constitutes a sufficient basis to recommend granting the relief sought, particularly when there was a legitimate basis for [plaintiff's] involuntary separation and general service characterization. Additionally, after a careful review of [plaintiff's] misconduct which formed the basis of the discharge, we find it more likely than not that even if she had been provided an [administrative discharge board], she would have received the same discharge characterization she now holds. Therefore, in our view, the fact she was not provided an [administrative discharge board] constitutes a harmless error. As such, it would be unfair to all those who served honorably to furnish the same coveted Honorable discharge to someone whose service was terminated for substantiated misconduct.

In addition, while the Board notes [plaintiff] was denied the opportunity to test for promotion during the 10E5 promotion cycle, the fact she did not test also constitutes a harmless error because she was not otherwise qualified to meet a promotion Board during that cycle. [Plaintiff] was not on active duty for an extensive period of time between 21 Mar 04 through 25 Jan 10, and arrived at her Recruiter duty station in Apr 10 after the 31 Mar 10 Promotion Eligibility Cutoff Date for promotion cycle 10E5, so she did not have a current EPR on file and therefore was "non-weighable" for promotion purposes. Further, even if she had been qualified to meet a promotion board and been selected for promotion during cycle 10E5, we find it more likely than not that having received two [letters of

-17-

reprimand], gone [absent without leave], and received nonjudicial punishment by Jan 11, she would have been disqualified for promotion.

In sum, while we acknowledge that certain errors were made in the processing of [plaintiff's] discharge for misconduct, we are not convinced that these errors constituted an injustice under 10 USC 1552, or that the command's actions in response to [plaintiff's] misconduct were motivated by reprisal in violation of 10 USC 1034. Accordingly, we find no basis to recommend granting the relief sought in this application.

Id. at 8-9.  The AFBCMR therefore denied plaintiff's application.  Id. at 9.

### C.  Plaintiff's Suit in the United States Court of Federal Claims

Plaintiff filed suit in this court on April 30, 2015.  In her complaint, plaintiff alleges that the Air Force violated its regulations when it failed to test her for promotion to Staff Sergeant during the 2010 May-June test cycle.  She also alleges that the Air Force violated its regulations when it deemed her absent without leave for eight days, disregarding the fact that she attempted to turn herself in at Moody Air Force Base, but was turned away.  Finally, plaintiff alleges that she was improperly denied a hearing before an administrative discharge board during her involuntary separation proceedings, preventing her from (1) challenging the charges brought against her, (2) describing the sexual harassment that she endured from a colleague, (3) arguing that she was improperly denied the opportunity to test for promotion to Staff Sergeant, and (4) explaining why she should be retained in the Air Force.  With respect to all of her allegations, plaintiff further contends that the AFBCMR erred in denying her application for the correction of her military records.  In her demand for relief, plaintiff requests that the court (1) set aside her involuntary administrative separation and reinstate her to active duty, with back pay and allowances; (2) restore her "rightful entitlements to testing and promotion"; and (3) grant her any other relief deemed proper.

In lieu of an answer, defendant filed a motion for judgment on the administrative record. Plaintiff did not initially file a response to defendant's motion.  However, in response to an order to show cause, plaintiff filed a motion for summary judgment, which the court deems to be a response to defendant's motion and a cross-motion for judgment on the administrative record.[13] Defendant subsequently filed a combined reply in support of its motion and response to

---

[13]  Because plaintiff is proceeding pro se, the court liberally construes her filings.  See Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) ("Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training. While the right 'does not exempt a party from compliance with relevant rules of procedural and substantive law,' it should not be impaired by harsh application of technical rules." (citation omitted) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981))).

plaintiff's motion, after which plaintiff filed a reply in support of her motion.  The court deems oral argument unnecessary.

## II. DISCUSSION

### A. Motions for Judgment on the Administrative Record

The parties have filed cross-motions for judgment on the administrative record pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims, seeking either to uphold or overturn the AFBCMR's decision denying plaintiff's application.  In ruling on such motions, the court makes "factual findings . . . from the record evidence as if it were conducting a trial on the record."  Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005);[14] see also id. at 1356 ("[J]udgment on the administrative record is properly understood as intending to provide for an expedited trial on the administrative record.").

### B. Correction of Military Records

Decisions regarding who may serve as an enlisted member of the Air Force are made by the Secretary of the Air Force ("Secretary") or his designees.  See 10 U.S.C. §§ 113(b), (d), 136(b), 505; Department of Defense Directive 5124.02, Under Secretary of Defense for Personnel and Readiness (USD(P&R)) ¶ 4.2 (June 23, 2008).  A former enlistee dissatisfied with the Secretary's decision to discharge her from the Air Force can petition the Secretary to correct an error in, or remove an injustice from, her military records.  See 10 U.S.C. § 1552.  Such a correction is made by the Secretary acting though a board of civilians–the AFBCMR–pursuant to procedures that he has established.  Id. § 1552(a)(1), (3).  If the former enlistee seeks relief from the AFBCMR, the decision of the AFBCMR becomes the final agency action, superseding the Secretary's original discharge decision.[15]  See Strickland v. United States, 423 F.3d 1335, 1339 (Fed. Cir. 2005) (noting that "the correction board process provides for a single final agency action in every case" and that the decision of the relevant service secretary–made through the correction board–"is plainly the final agency action").  Consequently, if the former enlistee files suit contesting her discharge after receiving an adverse decision from the AFBCMR, the court reviews the AFBCMR's decision.

---

[14]  The decision in Bannum was based upon RCFC 56.1, which was abrogated and replaced by RCFC 52.1.  RCFC 52.1, however, was designed to incorporate the decision in Bannum.  See RCFC 52.1, Rules Committee Note (June 20, 2006).

[15]  As noted above, the AFBCMR acts on behalf of the Secretary.  See 10 U.S.C. § 1552(a)(1), (3).  In some circumstances, the AFBCMR's decision is final; in other circumstances, the Secretary reviews the AFBCMR's recommendations and issues his own final decision.  See 32 C.F.R. § 865.4(*l*), .5 (2011).  In this case, because the AFBCMR denied plaintiff's application, its decision constitutes the Secretary's final decision.  Id. § 865.4(*l*)(1).

Correction board decisions are entitled to deference. Bray v. United States, 515 F.2d 1383, 1391 (Ct. Cl. 1975) (per curiam); see also Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (noting that a court is not to substitute its judgment for that of the correction board "when reasonable minds could reach differing conclusions on the same evidence"); cf. Dodson v. U.S. Gov't, Dep't of the Army, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith . . . , and the military is entitled to substantial deference in the governance of its affairs."). Therefore, the court "will not disturb the decision of [a] corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005); accord Sanders v. United States, 594 F.2d 804, 811 (Ct. Cl. 1979) (en banc), superseded in part by statute, 10 U.S.C. § 628 (2000 & Supp. I 2002), as recognized in Richey v. United States, 322 F.3d 1317, 1323-24 (Fed. Cir. 2003). The individual challenging a correction board decision bears the burden of establishing, by "cogent and clearly convincing evidence," that the board acted improperly. Arens v. United States, 969 F.2d 1034, 1037 (Fed. Cir. 1992).

## C. Plaintiff Has Not Established That the AFBCMR's Decision Was Improper

As noted above, plaintiff alleges in her complaint (and reiterates in her cross-motion for judgment on the administrative record and reply in support of that motion[16]) that the Air Force violated its regulations on three occasions–improperly denying her the opportunity to test for promotion to Staff Sergeant, improperly computing the length of time that she was considered absent without leave, and improperly denying her right to appear before an administrative discharge board during her involuntary separation proceedings–and that the AFBCMR erred in denying her relief for these violations. The court addresses each purported violation in turn.

### 1. Testing for Promotion to Staff Sergeant

Plaintiff first contends that she was improperly deprived of the opportunity to test for promotion to Staff Sergeant during the 2010 May-June test cycle. She asserts that she was entitled to receive a CAFSC when she was sent to Air Force Recruiting School, relying on table 3.9 of AFI 36-2101, which provides that the "CAFSC effective date (for retraining through a formal school [including special duty]) is the date [the airman] departed [her] current duty station [for temporary duty] to accomplish required training . . . ." Plaintiff further asserts that she actually received a CAFSC with an effective date of January 25, 2010, the date that she was ordered to depart for Air Force Recruiting School, but that the Air Force did not properly update its personnel records to reflect that fact. Finally, plaintiff asserts, had the Air Force properly updated her personnel records to reflect the assignment of a CAFSC, she would have been permitted to test for promotion to Staff Sergeant during the 2010 May-June test cycle. All of

---

[16] Plaintiff addresses some of the allegations from her complaint in her cross-motion for judgment on the administrative record and other allegations from her complaint in her reply in support of her cross-motion. As previously noted, see supra note 13, the court liberally construes plaintiff's submissions.

plaintiff's assertions are correct, as reflected in her January 25, 2010 assignment order and the May 21, 2013 advisory opinion.

The AFBCMR recognized that plaintiff was improperly deprived of the opportunity to test for promotion to Staff Sergeant during the 2010 May-June test cycle. However, it concluded that the Air Force's errors were harmless, for two reasons. First, the AFBCMR explained that plaintiff would not have been eligible for promotion consideration even if she had tested during the 2010 May-June test cycle because plaintiff did not have an EPR on file by the March 31, 2010 promotion eligibility cutoff date, a necessary prerequisite for promotion consideration. Second, the AFBCMR remarked that even if plaintiff had been selected for promotion, it was probable that she would have been disqualified for promotion upon receiving the two letters of reprimand and the Article 15 nonjudicial punishment.

The AFBCMR's finding of harmless error is supported by the record. Although the Air Force erred in maintaining plaintiff's personnel records, resulting in her inability to test for promotion to Staff Sergeant during the 2010 May-June test cycle, plaintiff faced other obstacles to being promoted–she did not have an EPR on file and she was subsequently disciplined for several offenses–that rendered the Air Force's errors ultimately irrelevant. The court therefore concludes that the AFBCMR's decision on this issue was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

## 2. Duration of Absence Without Leave

Plaintiff next contends that the Air Force erred by considering her absent without leave after she attempted to turn herself in to military authorities at Moody Air Force Base on December 21, 2010. She specifically relies on paragraph 4.3.1 of AFI 36-2911, which provides that "[a]n absentee's return to military control occurs at the date and hour that" the "absentee surrenders to . . . military authorities" or "otherwise comes under the control of military personnel." Plaintiff raised this objection–without expressly citing AFI 36-2911–during her Article 15 proceedings. However, Lieutenant Colonel Formica apparently was unswayed because he imposed nonjudicial punishment that was based, in part, on plaintiff's failure to report to her place of duty from December 20, 2010, through December 28, 2010. Plaintiff did not appeal Lieutenant Colonel Formica's decision, and that decision was later declared to be legally sufficient.

The AFBCMR agreed with the analysis set forth in the June 4, 2013 advisory opinion and concluded that Lieutenant Colonel Formica did not act arbitrarily or capriciously in imposing plaintiff's nonjudicial punishment. The AFBCMR's decision is supported by the record. As previously noted, plaintiff did not appeal her nonjudicial punishment and the decision imposing the punishment was found to be legally sufficient. The court therefore concludes that the AFBCMR's decision on this issue was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### 3. Appearance Before an Administrative Discharge Board

Finally, plaintiff argues that she was improperly denied a hearing before an administrative discharge board during her involuntary separation proceedings. She relies on paragraph 6.2.2 of AFI 36-3208, which provides that an airman who is recommended for discharge must be granted the opportunity to be heard by an administrative discharge board if the airman has six or more years of combined active and inactive service when involuntary separation proceedings are initiated. Plaintiff contends, accurately, that she had more than six years of active and inactive service at the time that Lieutenant Colonel Formica notified her that she was being processed for administrative separation. She therefore claims that she should have been afforded an opportunity to appear before an administrative discharge board. Plaintiff is correct.

The AFBCMR recognized that the Air Force erred by not affording plaintiff the opportunity to appear before an administrative discharge board during her involuntary separation proceedings, but concluded that the error was harmless, for three reasons. First, the AFBCMR remarked that plaintiff's misconduct provided a legitimate basis for plaintiff's discharge and the characterization of plaintiff's service as "under honorable conditions - (general)." Second, the AFBCMR agreed with the February 18, 2015 advisory opinion that had plaintiff appeared before an administrative discharge board, the board likely would not have recommended that plaintiff's service be characterized as honorable due to plaintiff's misconduct. Third, the AFBCMR stated that plaintiff's discharge was thoroughly reviewed by the inspector general of the Air Force Recruiting Service, the inspector general of the Air Force, and the inspector general of the United States Department of Defense, a level of scrutiny not typically afforded to airmen facing discharge for misconduct.

The AFBCMR's finding that the Air Force's failure to provide plaintiff with an opportunity to be heard by an administrative discharge board was harmless error, and the AFBCMR's rationales for that finding, are supported by the record. Plaintiff admitted to multiple incidents of misconduct in her responses to the letters of reprimand and her submissions to Lieutenant Colonel Formica during her Article 15 and involuntary separation proceedings. And, as documented in a report of investigation, three inspectors general performed an extensive review of plaintiff's allegations of reprisal, ultimately concluding that plaintiff was discharged for misconduct, and not as reprisal for making protected communications. Based on these facts, the AFBCMR was entitled to surmise that a hearing before an administrative discharge board would not have prevented, or changed the character of, plaintiff's discharge. The court therefore concludes that the AFBCMR's decision on this issue was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

## III. CONCLUSION

Plaintiff has not established that the AFBCMR's decision denying her application for the correction of her military records was arbitrary, capricious, contrary to law, or unsupported by

substantial evidence.[17]  Consequently, the court **GRANTS** defendant's motion for judgment on the administrative record and **DENIES** plaintiff's cross-motion for judgment on the administrative record.  Because plaintiff has not asserted any claims upon which she can prevail, the court **DISMISSES** her complaint with prejudice.  No costs.  The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge

---

[17]  Because plaintiff has not satisfied her burden, the court need not address the propriety of the relief sought by plaintiff in her complaint.